UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KHAELA EDWARDS, *et al.*, | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 4:20-cv-01156-MTS |
| CITY OF FLORISSANT, MISSOURI | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss, Doc. [27], which argues Plaintiffs have failed to state a claim upon which relief can be granted. The parties have briefed the matter fully, and it is ready for adjudication. For the reasons discussed below, the Court will grant Defendant's Motion and dismiss this case.

**I.     Background**[1]

Starting in June 2020, groups of individuals held repeated protests outside Defendant Florissant, Missouri's police department following the death of George Floyd in Minnesota and the release of video that shows a Florissant police officer striking a fleeing suspect with the officer's vehicle. Plaintiffs Khalea Edwards, Arkayla Tenney-Howard, and Nidhi Krishnan all have attended some of the protests. They allege that, at times, "police officers have aggressively confronted non-violent protesters, including by making shows of force, donning riot gear, threatening arrests, using chemical munitions against non-violent protesters without warning, and arbitrarily arresting protesters for purported ordinance or statute violations." Doc. [17] ¶ 34.

---

[1] As is always the case on a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the Court takes the well-pleaded factual allegations in the First Amended Complaint as true but expresses no opinion on their accuracy. *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010).

On June 23, 2020, Plaintiffs allege that Plaintiff Edwards attended a protest and "witnessed police declare an unlawful assembly despite protesters not engaging in any acts of force or violence." *Id.* ¶ 39. Plaintiffs allege officers "threatened protesters with 'chemical retaliation' if they did not disperse," so protestors "left the area." *Id.* Later that day when protesters returned to the area, officers "pushed them out of the street in which they were standing, despite the protesters once again not engaging in any acts of force or violence." *Id.*

On June 27, 2020, both Plaintiff Krishnan and Plaintiff Tenney-Howard attended the protests. *Id.* ¶¶ 40, 41. Krishnan witnessed officers arresting protestors after the officers declared an unlawful assembly and gave protesters five minutes to disperse. *Id.* ¶ 40. Plaintiffs allege that among the protesters there was an "absence of an agreement of one person with six or more other persons acting in concert to pose an imminent threat to use force or violence or to violate a criminal law with force or violence." *Id.* Plaintiff Tenney-Howard was among those arrested that day, after she was "sprayed with a chemical irritant" and after she was given five minutes to disperse. *Id.* ¶ 41. She also maintains there was "an absence of persons acting in concert to pose an imminent threat to violate a criminal law with force or violence." *Id.*

On June 29, 2020, "protesters were standing in the street in front of the police station and chanting peacefully" when officers began arresting the protesters. *Id.* ¶ 42. Officers told the protesters "to back up until they were standing all the way across the street in a parking lot." *Id.* While Plaintiffs allege these events occurred, they do not allege that any of the three of them were there that day. *Id.* Similarly, they allege that on July 5, 2020 officers declared an unlawful assembly regarding protesters "demonstrating outside" the police station, but Plaintiffs do not allege they were there that day either. *Id.* ¶ 43. Without warning, Plaintiffs allege, officers "pushed protesters back" and "off [] police station grounds." *Id.* Plaintiffs further allege that the

police then fired "multiple rounds of rubber bullets at the protesters," but, again, they do not allege they were among the protesters that day. *Id.* Finally, on July 6, 2020, Plaintiffs allege that Plaintiff Edwards gathered "peacefully in the police station parking lot." *Id.* ¶ 44. Plaintiffs allege Edwards saw police come out of the station and declare an unlawful assembly. *Id.* Officers went back into the police station only to return and arrest protesters, "including some who had been standing in an area marked a 'Designated Protest Zone.'" *Id.*

Because of all these alleged events, Plaintiffs say they "reasonably fear they will be arrested despite committing no crime if they return to Florissant to protest." *Id.* ¶ 45. Plaintiffs Edwards and Tenney-Howard have refrained from further protesting in Florissant, though they otherwise would have attended. *Id.* Similarly, Plaintiff Krishnan limited her protesting in Florissant. *Id.* Based on these allegations, Plaintiffs assert four counts in this action under 42 U.S.C. § 1983. Counts I and II both allege "Arbitrary Declarations," with Count I under the theory of a violation of the First and Fourteenth Amendments and Count II under the theory of a violation of the Due Process Clause of the Fourteenth Amendment. In a similar way, Counts III and IV both allege "Unlawful Dispersal Commands," with Count III under the theory of a violation of the First and Fourteenth Amendments and Count IV under the theory of a violation of the Due Process Clause of the Fourteenth Amendment. For all four counts Plaintiffs seek a declaratory judgment, injunctive relief, and nominal damages.

## II. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the legal sufficiency of a complaint. When

considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and makes all reasonable inferences in favor of the nonmoving party, but the Court "need not accept as true plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019); *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).  To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'"  *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The plausibility of a complaint turns on whether the facts alleged allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lustgraaf*, 619 F.3d at 873 (quoting *Iqbal*, 556 U.S. at 678).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557.

## III.    Discussion

While a municipality, like Defendant, is a "person" that can be liable under 42 U.S.C. § 1983, the Supreme Court has made clear that a municipality "cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor."  *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs. of*

*N.Y.*, 436 U.S. 658, 691 (1978). That said, municipal liability "requires a constitutional violation by a municipal employee," *Meier v. St. Louis, Mo.*, 934 F.3d 824, 829 (8th Cir. 2019), but "[i]t is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (cleaned up) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *accord Calgaro v. St. Louis Cty.*, 919 F.3d 1054, 1058 (8th Cir. 2019) ("A county may be liable for a constitutional violation under § 1983 only if the violation resulted from a policy or custom of the municipality.").

Plaintiffs allege their constitutional injuries arise from Defendant's police department's "policy or custom of arbitrarily declaring unlawful assemblies when there is no lawful basis to do so and ordering protestors to disperse on the basis of this unlawful declaration." Doc. [17] ¶ 2; *accord id.* ¶ 12; *see also id.* ¶¶ 51, 65. In pleading the alleged unlawfulness of these declarations and orders to disperse, Plaintiffs' First Amended Complaint focuses on two seemingly relevant statutes, Mo. Rev. Stat. §§ 574.040 (Unlawful Assembly) and 574.060 (Refusal to Disperse).

Section 574.040 creates the offense of "unlawful assembly." It provides in relevant part that a person commits the offense if "he or she knowingly assembles with six or more other persons and agrees with such persons to violate any of the criminal laws of this state or of the United States with force or violence." § 574.040. Section 574.060 creates the related offense of "refusal to disperse." It provides that a person commits the offense "if, being present at the scene of an unlawful assembly, or at the scene of a riot, he or she knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot." § 574.060.

Plaintiffs allege that "[d]espite" the statutes' language, Defendant's police department has a custom or policy of "declaring or threatening to declare protests of police misconduct to be unlawful assemblies in the absence of an agreement of one person with six or more other persons to imminently violate a criminal law with force or violence" and a custom or policy of "arresting or threatening to arrest individuals for failure to disperse from purported unlawful assemblies in the absence of an agreement of one person with six or more other persons to imminently violate a criminal law with force or violence or the absence of a riot." Doc. [17] ¶¶ 17, 20. Put more succinctly, they allege Plaintiffs have declared unlawful assemblies and ordered protesters to disperse though protesters have not violated section 574.040 or section 574.060. The Court concludes, though, that while a violation of those criminal statutes would be sufficient to trigger the police's ability to declare an unlawful assembly or to order people to leave a specific area, it is not necessary. *Cf. State v. Mast*, 713 S.W.2d 601, 603 (Mo. Ct. App. 1986) (cited by Plaintiffs but examining "the *offense* of unlawful assembly," not the police declaring assemblies to be unlawful (emphasis added)). Put simply, the police's power to declare that an assembly is unlawful and to order individuals to disperse is not tethered to Missouri's statutes codifying the criminal offenses of unlawful assembly and failure to disperse. Consequently, Plaintiffs only have established in their First Amended Complaint that no protesters committed those two specific offenses.

Time and again Plaintiffs pleaded that there was "an absence of an agreement of one person with six or more other persons acting in concert to pose an imminent threat to violate a criminal law with force or violence" prior to Defendant's police officers declaring an unlawful assembly. Doc. [17] ¶ 38; *accord id.* ¶¶ 3, 40, 49, 56, 63–65, 72. It may be "consistent with" a First Amendment violation if officers declared the assembly unlawful and ordered protesters to

disperse though no protesters were violating those particular criminal statutes, but it ignores the "wide swath" of other lawful reasons officers could have dispersed them. *Twombly*, 550 U.S. at 554. Even assuming it is true—assuming that there were not seven or more persons acting in concert to pose an imminent threat—"obvious alternative explanation[s]" exist for the officers' declarations of an unlawful assembly and orders to disperse. *Id.* at 568; *see also Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 899 (E.D. Mo. 2019) (dismissing § 1983 claims after noting "[c]ommon sense and experience show that many 'obvious alternative explanation[s]' exist[ed]" for defendant's actions).

Indeed, the First Amended Complaint details one of the lawful reasons Defendant's officers could have declared the assemblies at issue unlawful; it explicitly described how protestors impeded traffic. For example, the First Amended Complaint notes how protesters painted "the message 'Black Lives Matter' *on the street* in front of the police department." Doc. [17] ¶ 32 (emphasis added). Plaintiffs describe how on one day protesters "were standing in the street in front of the police station" when officers told them to "back up until they were standing all the way across the street in a parking lot." *Id.* ¶ 42. Another time they specifically allege that Defendant's police officers "pushed [protesters] out of the street in which they were standing." *Id.* ¶ 39. Controlling traffic is but one obvious alternative explanation. *See Walker v. City of Birmingham*, 388 U.S. 307, 316 (1967) ("When protest takes the form of . . . picketing on public streets and sidewalks, the free passage of traffic and the prevention of public disorder and violence become important objects of legitimate state concern."); *see also St. Charles Cty. v. Laclede Gas Co.*, 356 S.W.3d 137, 140 (Mo. banc 2011) ("The law is clear that municipal governments have the exclusive authority to control and regulate public roads."); *Smith v. City of St. Louis*, 409 S.W.3d 404, 425 (Mo. Ct. App. 2013).

The protesters had the right under the First Amendment to peaceably assemble and to express their speech, but their exercise of their First Amendment rights did not come with impunity or prevent officers from stopping illegal conduct or conduct that plainly puts others in harm's way.  "The First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others."  *Weed v. Jenkins*, No. 4:15-cv-140-RLW, 2016 WL 4420985, at *6 (E.D. Mo. Aug. 18, 2016), *aff'd*, 873 F.3d 1023 (8th Cir. 2017) (dismissing § 1983 suit brought by participant in highway overpass protest where officer told assembled protesters to disperse, plaintiff failed to disperse, and was arrested).

If a single person was standing in the middle of a lane on a highway holding a political sign, few would dispute that a police officer could lawfully order them to exit the roadway.  *See, e.g.*, *Langford v. City of St. Louis, Mo.*, 3 F.4th 1054, 1060 (8th Cir. 2021) (concluding police officers did not violate plaintiff's First Amendment rights when they arrested her after she declined to obey multiple dispersal orders to leave the street to clear the way for traffic).  If ten more individuals with political signs join the one, the officer does not suddenly become powerless to call the assembly unlawful or order the eleven to leave the highway even if those eleven have no intention of acting with "force or violence."  *See* Mo. Rev. Stat. § 574.040.  As the Supreme Court has noted,

> "[t]he constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.  The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order . . . . Governmental authorities have the duty and responsibility to keep their streets open and available for movement.  A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building . . . ."

*Cox v. Louisiana*, 379 U.S. 536, 554–55 (1965).

CONCLUSION

The allegations in Plaintiff's First Amended Complaint, even if true, do not raise a claim of entitlement to relief because the Plaintiffs failed to plead facts excluding the wide swath of lawful reasons, the obvious lawful alternative explanations, for Defendant's officers' declarations and orders of dispersal.  As discussed, Plaintiffs even affirmatively pleaded some of those lawful reasons officers could have done so.  *See, e.g.*, Doc. [17] ¶¶ 32, 39, 42, 43.  Without more, Plaintiffs have not "nudged [their] claims" of First Amendment and Fourteenth Amendment violations "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).[2]

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, Doc. [27], is **GRANTED**.

An appropriate Order of Dismissal is filed simultaneously with this Order.

Dated this 23rd day of August, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[2] Since the Court concludes that Plaintiffs did not sufficiently plead a constitutional violation by a municipal employee, the Court cannot reach whether Plaintiffs sufficiently pleaded that any violation resulted from a policy or custom of Defendant.